LEONIDAS GIL DE GIBAJA AND ELENA H. GIL DE GIBAJA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gil de Gibaja v. Commissioner
Docket No. 8049-74.
United States Tax Court
T.C. Memo 1977-313; 1977 Tax Ct. Memo LEXIS 121; 36 T.C.M. (CCH) 1260; T.C.M. (RIA) 770313; September 19, 1977, Filed Leonidas Gil de Gibaja, pro se. Gerald J. O'Toole, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioners' income tax: Year
Deficiency
1969
$ 913.07
1970
1,997.04
1971
1,891.45
The sole issue for decision is whether petitioners are entitled to net operating loss carryover deductions for the years 1969, 1970 and 1971 for the loss of property confiscated by the Cuban government. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Leonidas and Elena H. Gil de Gibaja, husband and wife, resided in Eatontown, New Jersey, at the time they filed their petition. Elena H. Gil de Gibaja is a party *122 solely by virtue of having filed a joint return with her husband, and therefore we shall refer to Leonidas Gil de Gibaja as petitioner. Prior to October 15, 1962, petitioner was a resident and citizen of Cuba, where he had been a certified public accountant for 20 years. In addition, petitioner and his wife were the sole shareholders in Compania Inmobiliaria Tuyard ("Tuyard"), a Cuban corporation engaged in the real estate business. On October 14, 1960, petitioner owned directly or through Tuyard the following pieces of real estate: (1) urban rental property owned by Tuyard; (2) urban rental property owned directly by petitioner: (a) an apartment (b) one of the three apartments of the building in which he lived; (3) his personal residence (the other two apartments in the building in which he lived); and (4) a tract of land held for investment. On October 14, 1960, the Cuban government enacted the Urban Reform Law under which it expropriated all urban rental property. This law provided that the former owners of the expropriated properties could receive as compensation monthly indemnity payments. Thereafter, the Cuban government expropriated the rental property *123 owned by petitioner and by Tuyard. Under the Urban Reform Law, petitioner became entitled to monthly indemnity payments of $640approximately. He received a total of $8,400 in indemnity payments. Subsequently, on December 5, 1961, the Cuban government enacted Law No. 989 under which all property rights of a Cuban citizen, who left Cuba under an exit visa but did not return to Cuba by the expiration date on that exit visa, were forfeited to the State. One of the effects of Law No. 989 was the nullification of rights to receive indemnity payments which the earlier Urban Reform Law had granted to those who were now leaving Cuba. Petitioner and his wife left Cuba and arrived in Miami on October 15, 1962 under a 29-day exit visa. At the time of leaving Cuba, they did not absolutely intend to abandon their property. They remained in the United States and acquired resident alien status for United States tax purposes on October 15, 1962. As a consequence of their failure to return to Cuba, petitioner and his wife forfeited their home, their right to indemnity payments, and some real estate held for investment. On November 15, 1964, petitioner visited the Internal Revenue Service *124 office in Brooklyn to file the forms necessary to elect to carryover his Cuban expropriation loss. Doing some of her work on a yellow pad, a female employee helped petitioner complete the necessary forms. Petitioner signed the completed forms. On his tax returns from 1963 through 1968, petitioner deducted a total of $32,416 in net operating loss carryover deductions arising from his Cuban expropriation losses. On their income tax returns for 1969, 1970, and 1971, petitioner and his wife deducted as net operating loss carryovers $5,105.63, $10,582, and $10,541.90, respectively. Respondent denied the deductions for these three years in their entirety. OPINION In 1960 the Cuban government seized certain urban rental properties which petitioner and his wife had owned either directly or through their ownership of Compania Inmobiliaria Tuyard ("Tuyard"). As compensation for these seizures, the Cuban government promised to make monthly indemnity payments to petitioner and his wife.In 1962, petitioner and his wife fled Cuba and sought refuge in the United States. As a result of their flight, they forfeited their personal residence, some land held for investment, and their right *125 to receive the indemnity payments. The issue for decision is whether petitioner and his wife are entitled to net operating loss carryover deductions in 1969, 1970, and 1971, arising from the confiscation and forfeiture in 1962. Because petitioner, who has the burden of proof, has failed to prove his basis in any of the assets in issue, we do not reach the issues raised by respondent, namely, (1) that petitioner failed to file the election which is necessary under section 172(b)(3)(C)(iii) [1] to carry over his Cuban expropriation loss, (2) that any loss petitioner sustained occurred prior to his becoming a resident alien, and (3) that petitioner's 1962 loss was non-business in character.
Petitione's loss, be it capital or ordinary, business or non-business, is limited to his basis in the property confiscated. Section 165(b). Petitioner has not shown his basis in the Tuyard stock nor Tuyard's basis in the urban rental property it owned. He has not proved his basis in his urban rental property, his personal residence, or the tract of land. We do not know how to allocate the *126 indemnity payments between Tuyard's and petitioner's urban rental properties. We do know that petitioner took total net operating loss deductions of $32,416 for the years 1963 through 1968. Only if his basis in business property exceeded this amount would he be entitled to an additional net operating loss deduction in any event.Since we have no proof of the basis of the properties in issue, we must hold against petitioner for failure of proof. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code, as in effect during the years in issue.↩